IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | CASE NO. BK02-80974 |
| | ) | |
| BROOK VALLEY IV JOINT VENTURE, | ) | |
| | ) | CH. 7 |
| Debtor. | ) | |
| | ) | |
| RICK D. LANGE, Chapter 7 Trustee, | ) | |
| | ) | |
| Plaintiff, | ) | A04-08089 |
| | ) | |
| vs. | ) | |
| | ) | |
| ROBERT C. SCHROPP; LEO E. DAHLKE; RCS & SONS, INC.; PHOENIX PROPERTIES, L.L.C.; PHOENIX PROPERTIES OF BROOK VALLEY 1, L.L.C.; PHOENIX PROPERTIES OF BROOK VALLEY 2, L.L.C.; R&L VALLEY PROPERTIES, L.L.C.; JERRY SLUSKY; PHOENIX BROOK VALLEY RE-CAP; and JOHN DOES 1 through 20, | ) ) ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |
| IN THE MATTER OF: | ) | CASE NO. 02-80973 |
| | ) | |
| BROOK VALLEY VII JOINT VENTURE, | ) | |
| | ) | CH. 7 |
| Debtor. | ) | |
| | ) | |
| RICK D. LANGE, Chapter 7 Trustee, | ) | |
| | ) | |
| Plaintiff, | ) | A04-08090 |
| | ) | |
| vs. | ) | |
| | ) | |
| ROBERT C. SCHROPP; LEO E. DAHLKE; RCS & SONS, INC.; PHOENIX PROPERTIES, L.L.C.; PHOENIX PROPERTIES OF BROOK VALLEY 1, L.L.C.; PHOENIX PROPERTIES OF BROOK VALLEY 2, L.L.C.; R&L VALLEY PROPERTIES, L.L.C.; JERRY SLUSKY; PHOENIX BROOK VALLEY RE-CAP, L.L.C.; and JOHN DOES 1-20, | ) ) ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM

Trial was held in Omaha, Nebraska, on December 15 and 16, 2005, regarding the Complaints to Recover Property, for an Accounting, to Determine Rights, and for Damages in each of the referenced adversary cases. Jenna B. Taub and Robert F. Craig appeared for Rick D. Lange, plaintiff, and Edward Hotz appeared for the defendants. Mr. Hotz is not one of the lawyers referred to as representing the debtors and Mr. Schropp and Mr. Dahlke during the times discussed to in this opinion. Mr. Hotz's firm was also not involved in the matters discussed below.

This memorandum contains findings of fact and conclusions of law required by Federal Rule of Bankruptcy Procedure 7052 and Federal Rule of Civil Procedure 52. This is a core proceeding as defined by 28 U.S.C. § 157(b)(2)(E) and (O).

## BACKGROUND

The plaintiff, as trustee, has brought these two adversary proceedings against each of the defendants because the plaintiff believes each of these bankruptcy cases was filed as a Chapter 11 case solely for the benefit of individual defendants Robert Schropp and Leo Dahlke and their related entities. It is the position of the trustee that the bankruptcy cases were filed to enable Mr. Schropp and Mr. Dahlke, through one or more of their entities, to purchase the assets of the debtors at a foreclosure sale, in violation of their fiduciary duties to the estate. The trustee asserts that in addition to purchasing assets of the estate in violation of their fiduciary duties, Mr. Schropp and Mr. Dahlke have converted for their own benefit the net profits of the debtors earned while Mr. Schropp and Mr. Dahlke were in control of the debtors; that, as a result of their purchase of the assets, they obtained control over the net profits of entities they created to purchase the assets of the debtors; and, when they sold the assets of the debtors in 2005, they made significant profits on the sale. The trustee prays for damages incurred by the estates as a result of the activities of Mr. Schropp and Mr. Dahlke, and an accounting from Mr. Schropp and Mr. Dahlke.

## FINDINGS OF FACT

From the preliminary pretrial statements in A04-4089, at Filing No. 53, and in A04-8090, at Filing No. 63 I find certain uncontroverted facts:

a. Plaintiff is the court appointed Chapter 7 trustee in this case which was filed on the 2nd day of April 2002 and converted to Chapter 7 on the 10th day of June 2004.

b. Defendant RCS & Sons, Inc. is a Nebraska corporation with its principal place of business at 1411 No. 72nd Street, Omaha, Nebraska 68114. Defendant Robert Schropp is a resident of Omaha, Nebraska with his principal place of business at 1411 No. 72nd Street, Omaha, Nebraska. On information and belief Mr. Schropp was at all times material the ultimate controlling person of RCS & Sons, Inc.

c. Leo E. Dahlke is a resident of Omaha, Nebraska.

d. Phoenix Properties, L.L.C. is a Nebraska Limited Liability Corporation with its principal place of business in Omaha, Nebraska and at all times material prior to January 15, 2005, was under the control of Schropp and Dahlke.

e.  Phoenix Properties of Brook Valley 1, L.L.C. is a Nebraska Limited Liability Corporation and a subsidiary of Phoenix Properties, L.L.C. with its principal place of business in Omaha, Nebraska.

f.  Phoenix Properties of Brook Valley 2, L.L.C., is a Nebraska Limited Liability Corporation, and a subsidiary of Phoenix Properties, L.L.C. with its principal place of business in Omaha, Nebraska.

g.  R&L Valley Properties, L.L.C., is a Nebraska Limited Liability Corporation with its principal place of business in Omaha, Nebraska and under the control of Schropp and Dahlke.

h.  Phoenix Brook Valley Re-Cap, L.L.C. is owned by HMG Properties, L.L.C., BenGin, Dana Group, L.L.C. and Mark Seger and has its principal place of business in Omaha, Nebraska.

I.  Defendant Jerry Slusky is a resident of Omaha, Nebraska and an attorney at law and is identified as trustee under a certain Deed of Trust dated September 25, 2002, and recorded against the building that is the subject of this action on September 27, 2002, as Instrument No. 2002-38082 in the records of Sarpy County, Nebraska, executed by Phoenix Brook Valley Re-Cap, L.L.C., beneficiary, to secure the sum of $600,000 and any other amounts payable under the terms thereof.

j.  Defendant Phoenix Brook Valley Re-Cap, L.L.C., is identified as beneficiary under a certain Deed of Trust dated September 25, 2002, and recorded against the building that is the subject of this action on September 27, 2002, as Instrument No. 2002-38082 in the records of Sarpy County, Nebraska executed by the defendant Phoenix Properties, L.L.C. to secure the sum of $600,000 and any other amounts payable under the terms thereof.

k through p, omitted, because they refer to former defendants only

q.  Debtor owned and operated one commercial/industrial office building (the "Building") located in Sarpy County, Nebraska.

r.  The debtors, Brook Valley VII Joint Venture, and Brook Valley IV Joint Ventures, are Nebraska partnerships that at all times material were owned by the following persons in the following percentages:
I)   Prime Realty, Inc. ("Prime) - 37.5%
ii)  Schropp - 37.5%
iii) Dahlke - 25%

s.  On or about the 18th day of September 2001, Prime voluntarily dissociated itself from the debtor partnerships and instituted an action for dissolution in the District Court of Douglas County, Nebraska. On or shortly after that date, defendants Schropp and Dahlke seized control of the ongoing business activities of the debtors, including the buildings and the rents which they generated.

t.  On the 2nd day of April 2002, Schropp and Dahlke initiated these cases, through the filing of Voluntary Petitions but without the consent of Prime.

-3-

u.  From and after the filing of this case until the appointment of plaintiff as trustee, the debtors functioned as a debtor in possession under the exclusive control of Schropp and Dahlke.

v.  At or about the time of the filing of the voluntary petitions, debtors each owned an industrial flex building with one or more tenants.

w.  At all times material, the buildings were encumbered with a first deed of trust held by First National Bank of Omaha. In addition, there was a second deed of trust asserted by Darland Construction Company and a third deed of trust asserted by Prime Realty. Neither of these latter two asserted claims has been adjudicated.

x.  At all times material, the general intangibles of the debtors were encumbered pursuant to a security agreement in which First National Bank was the secured party, securing their obligation.

y.  Seventeen days after the filing of this case, debtors and First National Bank stipulated that the Bank could have relief from the automatic stay for the purpose of foreclosing its deed of trust.

In addition to the agreed upon uncontroverted facts, I find the following facts:

In March of 2002, McCart put his company, Prime Realty, Inc., into Chapter 11. In early April of 2002, Mr. Schropp and Mr. Dahlke put several of their real estate partnerships into Chapter 11. During 2001 and 2002, there were many foreclosures and substantial sums of money were lost by the partners and their lenders.

Two of the partnerships which were placed into bankruptcy by Mr. Schropp and Mr. Dahlke were Brook Valley IV and Brook Valley VII, the debtors involved in this current litigation. Mr. Schropp and Mr. Dahlke put these two partnerships into Chapter 11 for the sole purpose of protecting themselves from a deficiency judgment in any foreclosure action for which they would be responsible either as general partners or as personal guarantors of the debts of the partnerships. One of the other partnerships with which they had been involved had gone through a foreclosure sale which resulted in a deficiency for which they had been required to pay thousands of dollars to the lender. They had no intention of that occurring again.

First National Bank of Omaha was the lender to the two partnerships. It had loans outstanding that were due in early April and early June of 2002. The loan on one of the properties was more than 1.2 million dollars and the loan on the other property was more than $800,000. Mr. Schropp and Mr. Dahlke were personally liable on the notes.

The records of the partnerships appear to show that the partnerships were able to service all of their operating and leasing expenses. However, because the buildings owned by the partnership had not been fully leased in early 2002, the partnerships did not generate sufficient cash flow to enable them to convince either First National Bank of Omaha or any other lender to refinance the notes that were coming due in April and June of 2002.

Although Mr. Schropp and Mr. Dahlke, both in their deposition testimony and in their trial testimony, plead ignorance concerning what happened in the bankruptcy cases, the record is clear. Less than three weeks after the bankruptcy cases were filed, the debtors stipulated for relief from

-4-

the automatic stay with First National Bank of Omaha. By the stipulation and the order approving the stipulation, First National Bank of Omaha was authorized to proceed with foreclosure sales under state law. The stipulations and the orders were very clear, both as to what was agreed to and as to what was authorized. Filing No. 69 is the motion for approval of the stipulation and agreed order dated April 19, 2002, for Brook Valley IV and Filing No. 70 is the same motion for Brook Valley VII. The orders approving the motions are at Filing No. 71 and No. 72. The stipulations both provide that the bank is

> . . . entitled to relief from the Automatic Stay under Section 362 of the Code and the Debtor has concurred with the grant of relief to allow FNB to foreclose and to exercise its rights as a secured creditor with respect to the collateral including selling the collateral, applying the proceeds to reduce the indebtedness due and owing to FNB by the Debtor and thereafter to deliver the balance of the proceeds, if any, to the Debtor subject to further order of this Court.

The order approving the stipulation states:

> IT IS FURTHER ORDERED that the balance of the sale proceeds after application and payment of indebtedness due and owing to the Bank by the Debtor as to the collateral securing this obligation shall be paid to the Debtor to be held subject to further order of this Court.

Prime Realty, Inc. and Mr. McCart objected to the grant of relief on more than one occasion. They asserted that the debtors were operationally profitable and that the buildings owned by the debtors were valued far in excess of the debt owed to the bank. In a resistance filed by the debtors to a motion for reconsideration filed by McCart and Prime Realty, Inc., at Filing No. 120, paragraph 11, debtor Brook Valley IV, through counsel, stated once again that the agreement with First National Bank and the order approving the agreement provided that after application of the sale proceeds to the debt of First National Bank, the bank would pay the balance to the debtor to be held subject to further order of the court with any liens or claims of other creditors to attach to the proceeds.

The court overruled the objections and motions for reconsideration, and First National Bank proceeded under state law with all the requirements for a foreclosure sale.

The foreclosure sales were scheduled on September 24, 2002. In the weeks leading up to the sale date, Mr. Schropp and Mr. Dahlke, through their attorneys and financial advisors, arranged to borrow from Great Western Bank sufficient money to pay off the First National Bank loans by purchasing at the sales. They created Phoenix Properties, L.L.C. which was to be the borrower and somewhat of a holding company. They also created Phoenix Properties of Brook Valley 1, L.L.C., and Phoenix Properties of Brook Valley 2, L.L.C., each of which was to hold one of the buildings purchased at the foreclosure sale.

Phoenix Properties, L.L.C. was the successful bidder at both sales. Filings No. 75 and No. 76 are the Report of Trust Deed Foreclosure Sale for Brook Valley IV and Brook Valley VII. These reports were filed by counsel for the debtors two days after the sale. That report, at paragraph 11 of Filing No. 75, states:

The sale of the property resulted in the payment of the first lien and other expenses to the First National Bank of Omaha in the total sum of $1,253,137.65 with respect to the property previously owned by Brook Valley IV.

At paragraph 12 of the report, it is stated:

> Since the first lien has been fully satisfied by the sale, it is now necessary to examine the remaining liens on the property to determine their validity and to establish the order of priority with respect to the remaining liens.

That language refers to liens which had been filed by Darland Construction Co. and Prime Realty, Inc.

That report misrepresents what actually took place at the sale and what Mr. Schropp and Mr. Dahlke actually did with regard to the Darland Construction Co. lien.

Mr. Schropp and Mr. Dahlke, through Phoenix Properties, L.L.C., bid 1.4 million dollars at the sale of the property owned by Brook Valley IV. When the sale actually closed, the First National Bank of Omaha received $1,253,137.65. The balance of the 1.4 million dollars, approximately $147,000, went to Darland Construction Co. As part of their pre-sale preparations, Mr. Schropp and Mr. Dahlke, through counsel and financial advisors, made an arrangement with Darland Construction Co. to obtain a release of Darland's liens against the real estate owned by Brook Valley IV and Brook Valley VII. The transaction with Darland, which is described in later correspondence from one of the lawyers for Mr. Schropp and Mr. Dahlke, who also happened to be an attorney for each of the debtors, Filing No. 92, September 20, 2004, explains:

> We are in receipt of your letter of September 9, 2004 requesting a payment of $146,862.35. At the time of the sale, Darland Construction held a second lien on both of these properties. Phoenix Properties purchased the liens from Darland and credit bid the amounts in excess of the first liens. There was no doubt that Darland was in second position.

That letter is significant because it, although being from an attorney in the same firm as the attorney who filed the report of sale on September 26, 2002, totally contradicts the representations made in the report of sale concerning the remaining balance after payment of First National Bank and the lien status of Darland Construction Co. That letter shows that Mr. Schropp and Mr. Dahlke and their lawyers did not comply with the stipulation for relief from stay entered into between the debtors and First National Bank of Omaha and did not comply with the orders of the court approving the stipulations. In addition, it shows that although counsel for the debtors represented in June of 2002, in the resistance to the motion to reconsider the order approving the stipulations, that any proceeds over the First National Bank debt would be paid to the debtor and held pending further court order, neither Mr. Schropp, Mr. Dahlke, nor their counsel followed through on such representation.

Pursuant to the stipulation with First National Bank of Omaha and the orders approving the stipulations, the $146,862.35 described in the September 20, 2004, letter from the law firm, Filing No. 92, was property of the bankruptcy estate of Brook Valley IV. Neither the debtors, Mr. Schropp or Mr. Dahlke, nor their attorneys had any authority to use those funds to "credit bid" against the Darland lien. Those funds were converted and used to protect the personal interest of Mr. Schropp and Mr. Dahlke so that they would no longer be personally liable on either the First National Bank

debt or the Darland debt with regard to debts related to property owned by Brook Valley IV and Brook Valley VII.

In April of 2002, shortly after relief from stay was granted to First National Bank of Omaha, it obtained appraisals of the properties owned by the debtors. Those appraisals appear at Filing No. 73 and No. 74. They each indicate value far in excess of the debt owed to First National Bank of Omaha. No bidder at the foreclosure sale came anywhere close to the values listed in the appraisal. Testimony from the financial advisor to Mr. Schropp and Mr. Dahlke is to the effect that the properties could not have been worth the values placed upon them in the appraisals because the properties had not been fully leased out at the time of the appraisal.

The arrangements resulting in the purchase by Phoenix Properties, L.L.C. were discovered by counsel for Prime Realty, Inc. shortly after the sale. Motions challenging the propriety of the transactions were filed, and in response, each of the debtors filed, at No. 79 and No. 80, a resistance to the motion to set aside the order for relief and for appointment of a trustee. Those resistances were dated January 3, 2003. In each, counsel purportedly representing the debtors, at Argument III, stated:

> Great Western Bank entered into a transaction with Phoenix Properties, L.L.C. Phoenix Properties, L.L.C. also apparently entered into a transaction with Phoenix Brook Valley Re-Cap, L.L.C. The purpose of both transactions was apparently to provide financing to Phoenix Properties to allow it to bid at the trust deed foreclosure sale conducted by the First National Bank of Omaha. Both of these transactions and the supporting documents were entered into between parties who are not parties to this bankruptcy proceeding. Those private transactions which apparently provided the financial resources for Phoenix Properties, L.L.C. to bid on and buy the real estate being sold at public auction have nothing to do with this bankruptcy estate.

That misleading argument was presented, in writing, to this court. It is a representation by counsel in the same firm that represented Mr. Schropp and Mr. Dahlke and that created Phoenix Properties, L.L.C. for the sole purpose of purchasing the assets of the debtors for the benefit of Mr. Schropp and Mr. Dahlke.

The court found that it could not set aside the order for relief or void the sales. These adversary proceedings were then filed.

Mr. Schropp and Mr. Dahlke, through Phoenix Properties, L.L.C., operated the buildings from and after the date of purchase, September 26, 2002, through the sale of the buildings in September of 2005, with regard to the Brook Valley IV property and through April of 2005, for the Brook Valley VII property. From the accountings of the net profit for each building, shown at Filing No. 97 and No. 98, it appears that they were profitable.

The properties were sold in 2005 by Phoenix Properties, L.L.C. They were sold for much more than the debts against them and the net proceeds from the sale were deposited in the registry of this court. The registry today, including interest shown on the most recent bank statement $378,364.49 being held in the Brook Valley IV case and $489,602.95 being held in the Brook Valley VII case.

Some months following the discovery of the activities of Mr. Schropp and Mr. Dahlke and their entities and attorneys, the Chapter 11 bankruptcy cases were converted to Chapter 7 and Mr. Lange was appointed trustee.

It is the position of the trustee that Mr. Schropp and Mr. Dahlke owed a fiduciary duty to the bankruptcy estates and that they breached such duty by purchasing assets of the debtors for their own personal benefit. As a remedy, the trustee requests the imposition of a constructive trust on the net profits from the 2005 sales of the properties, on the profits shown to have been earned by the properties during the time they were owned by the debtors-in-possession, from early April of 2002 through September 24, 2002, and on the profits earned by the buildings from the date of sale in September of 2002 through the final sale in 2005. Alternatively, the trustee requests a finding that Mr. Schropp and Mr. Dahlke converted property of the estates to their own use and damages should be assessed for such conversion.

## CONCLUSIONS OF LAW and DISCUSSION

The main defense asserted by Mr. Schropp and Mr. Dahlke and the other defendants is that once this court approved the stipulation for relief from stay and the First National Bank proceeded to exercise its rights under state law, the buildings were no longer property of the bankruptcy estate. That being so, it was not improper for Mr. Schropp and Mr. Dahlke to create Phoenix Properties, L.L.C. and purchase the buildings at the foreclosure sales. Defendants rely upon Nebraska law which provides that once the Notice of Default is given under a deed of trust, and the thirty day cure period passes, the debtor has no right to cure and loses all interest in the property. When the sale occurs, there is no right of redemption. Neb. Rev. Stat. § 76-1010(2). See In re Jones, 214 B.R. 492 (Bankr. D. Neb. 1997).

Mr. Schropp and Mr. Dahlke, through their counsel, who were also counsel for the debtors, went to a lot of trouble to keep the ownership of Phoenix Properties a secret from the court and from counsel for Prime Realty. Nebraska law governs the rights of parties involved in foreclosure proceedings. The defendants are not correct that the buildings themselves were no longer property of the bankruptcy estate as of the foreclosure sale, September 24, 2002. Notice of default in a deed of trust foreclosure matter, and failure to cure, causes the borrower to lose the right to bring the note current and reinstate the deed of trust as if no default had occurred. However, at that point, the borrower still owns the property and may pay the note in full, causing a release of the deed of trust lien and retaining all ownership rights. Therefore, the property purchased at the foreclosure sale by Phoenix Properties, L.L.C. was property of the bankruptcy estate.

It is longstanding bankruptcy policy that a trustee, or debtor-in-possession, is prohibited from purchasing property of the bankruptcy estate. Judge Minahan summarized that policy in the case of In re Rahe, 178 B.R. 801 (Bankr. D. Neb. 1995). First, he explained that 18 U.S.C. § 154, part of the Federal Criminal Code, makes purchasing a property of the bankruptcy estate a criminal act punishable by forfeiture of office and a fine. See 18 U.S.C. § 154(1). He then cited and quoted from numerous cases all beginning in 1910 which applied the purchasing prohibition to the civil context of the bankruptcy case itself.

Although defendants have attempted to distinguish the Rahe case and others cited by Judge Minahan and cases cited in the brief filed by the plaintiff/trustee, the attempt fails. The rule is applicable no matter what chapter and no matter what the facts concerning the transaction are. Mr. Schropp and Mr. Dahlke, the persons who controlled the debtors as debtors-in-possession,

were prohibited from purchasing property of the bankruptcy estate, directly or indirectly through Phoenix Properties, L.L.C.

The real estate assets purchased at the foreclosure sale were not the only assets which were property of the estate and which were misused by Mr. Schropp and Mr. Dahlke. The approximately $147,000 which was bid in excess of the First National Bank debt, was property of the estate by virtue of the stipulation for relief with First National Bank of Omaha, the orders approving the stipulations, the position taken by the debtors in resistance to Prime Realty, Inc.'s various motions prior to the sale, and the report of sale filed on September 26, 2002. Neither the debtors, First National Bank of Omaha, nor Mr. Schropp and Mr. Dahlke had authority to use any excess funds to settle with Darland Construction Co. The lien of Darland Construction Co., including its validity or priority, has never been determined. Mr. Schropp and Mr. Dahlke, through their advisors, bypassed the required court proceedings to buy down the lien for their own benefit. They used approximately $147,000 of the debtor's property to do so. They converted property of the bankruptcy estates to that extent.

Conversion is any unauthorized or wrongful act of dominion exerted over another's property which deprives the owner of his property permanently or for an indefinite period of time. Farmland Serv. Coop., Inc. v. S. Hills Ranch, Inc., 665 N.W.2d 641, 648 (Neb. 2003).

During the time that the debtors operated the buildings, the records show that Brook Valley IV made a "profit" or had "net cash flow" of $13,063.42. With regard to Brook Valley VII, the "net cash flow" was $73,517.90. Those amounts are property of the bankruptcy estates. They have never been accounted for and they have never been turned over to the trustee.

The trustee requests the imposition of a constructive trust on the net sale proceeds held by the Clerk of the Bankruptcy Court. A constructive trust is a relationship, with respect to property, subjecting the person who holds title to the property to an equitable duty to convey it to another on the ground that his or her acquisition or retention of the property would constitute unjust enrichment. Anderson v. Bellino, 658 N.W.2d 645, 658 (Neb. 2003). To establish a constructive trust, the court must find by clear and convincing evidence that legal title was obtained by fraud, misrepresentation, or an abuse of an influential or confidential relationship, and that, under the circumstances, the party holding legal title is not equitably entitled to hold and enjoy the property. Balfany v. Balfany, 476 N.W.2d 681, 684 (Neb. 1991). The factual findings above support the imposition of a constructive trust on the net sale proceeds.

Mr. Schropp and Mr. Dahlke are responsible for violating bankruptcy policy by purchasing property of the bankruptcy estate at the foreclosure sale. In addition, they are responsible for depriving the debtors of the money identified above and they are also responsible for the misrepresentations contained in the various filings which hid the use of the overbid amount, hid the true ownership of Phoenix Properties, L.L.C., and are responsible for failing to turn over to the trustee the net cash flow from the buildings while they were in charge of the debtors.

In conclusion, I find as follows:

1. The properties purchased at the foreclosure sales on September 24, 2002, are properties of each of the debtors' estates. Mr. Schropp and Mr. Dahlke, fiduciaries with regard to the bankruptcy estates, were prohibited from protecting their own financial interests by purchase of the properties at the foreclosure sale through their wholly owned corporation, Phoenix Properties, L.L.C.

  2. The use of $146,862.35 by Mr. Schropp and Mr. Dahlke, was a conversion of property of the bankruptcy estates. Whether or not the liens of Darland Construction Co. were valid and enforceable, Mr. Schropp and Mr. Dahlke, and their counsel, had no legal right to distribute those funds without order of the court. Interest on that amount will be part of the judgment from the date of the closing, September 24, 2002.

  3. The net cash flow from the partnership from April 2, 2002, to September 24, 2002, of $13,063.42 from Brook Valley IV and $73,517.90 from Brook Valley VII are property of the bankruptcy estates and, with interest from September 24, 2002, shall be paid to the trustee.

  4. The net cash flow from the properties while owned by Phoenix Properties, L.L.C. appear on paper to be positive and in a significant amount. However, there is no evidence that Phoenix Properties, L.L.C. distributed any of it to the owners and no evidence that as of the dates the properties were resold in 2005 there was any excess cash. There was testimony that the cash may have been reinvested in tenant improvements and, if so, would be included in the proceeds of sale which are being held by the Clerk.

  5. The appropriate remedy for violation of their fiduciary duties to these bankruptcy estates by purchasing estate property and converting money of the estate to their own use, is to impose a constructive trust upon net proceeds of the sale of the properties in 2005, in favor of the Chapter 7 trustee of the debtors. Such a remedy is necessary because Mr. Schropp and Mr. Dahlke and their entities would not have any net sale proceeds available to them had they not breached their duty to the bankruptcy estates and converted estate assets. They should not benefit financially from their prohibited actions. The constructive trust in the sale proceeds is a sufficient remedy for the trustee and the funds held by the Clerk are the only funds the trustee may receive to cover the conversion damages itemized above and the relief granted trustee for the violations itemized in the opinion. However, if the trustee does not receive the registry funds, for any reason, he will still hold an independent judgment against the defendants for the amounts listed in paragraphs number 2 and 3 above.

  6. By separate order in each of the bankruptcy estates, counsel who represented the debtors in the bankruptcy case while all of the above described actions and misrepresentations took place will be ordered to show cause why such counsel should not be sanctioned monetarily or otherwise for the described actions which benefitted only Mr. Schropp and Mr. Dahlke, but not the debtors.

  A separate judgment shall be filed.

  DATED this 3rd day of February, 2006.

                BY THE COURT:

                /s/ Timothy J. Mahoney
                Chief Judge

Notice given by the Court to:
  Jenna B. Taub  William Biggs, Jr.
  Robert F. Craig  Shaun James
  Edward Hotz  Jerry Slusky
  Rick Lange  U.S. Trustee